IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| NATALIE M., by and through her Parents, DAVID M. and JEAN H., | ) CIVIL NO. 06-00539 JMS/BMK ) ) |
| Plaintiffs, | ) ORDER ADOPTING REPORT OF ) THE SPECIAL MASTER |
| vs. | ) ) |
| DEPARTMENT OF EDUCATION, STATE OF HAWAII, | ) ) ) |
| Defendant. | ) ) |
| _____ | ) |

## ORDER ADOPTING REPORT OF THE SPECIAL MASTER

Before the court is an objection to the Special Master's Report awarding attorneys' fees and costs to Natalie M., by and through her parents, David M. and Jean H. ("Plaintiffs") pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415. Defendant makes a single objection, claiming that Plaintiffs were not "prevailing parties," and thus are not entitled to attorneys' fees and costs under the IDEA. The court disagrees, and adopts the Report of the Special Master.

## II.  BACKGROUND

Natalie was five years old at the time of the due process hearing and was eligible for services under the IDEA.  Natalie attended The Early School, a private preschool, during the 2003-2004 school year.  During the summer of 2004, Natalie's IEP ("Individualized Education Plan") team met to develop her IEP for the 2004-2005 school year.  At an August 10, 2004 IEP meeting, the Defendant State of Hawaii Department of Education ("DOE") proposed transitioning Natalie from The Early School to a new Head Start preschool at Heeia Elementary School, a DOE school, by October 1, 2004.  *See* Administrative Record on Appeal ("ARA") at 51.  Plaintiffs declined the DOE's proposed offer of a Free Appropriate Education ("FAPE") at Heeia Elementary at the August 10, 2004 IEP meeting and informed the IEP team that Natalie would continue at The Early School.  Hearings Officer's Decision, ARA at 249, ¶21.  Natalie remained at The Early School from October 2004 to August 2005.  Following the August 10, 2004 IEP meeting, Plaintiffs did not request a due process hearing to seek reimbursement for Natalie's unilateral placement at the Early School for the 2004-2005 school year.

For the 2005-2006 school year, Natalie was enrolled at the Education Laboratory School, a Hawaii charter school.  On November 28, 2005, Natalie's

IEP meeting was held at the Charter School. During this IEP meeting, the "IEP team reviewed [Natalie's August 10, 2004] IEP." *Id*. ¶23.

On March 28, 2006, Plaintiffs requested a due process hearing seeking reimbursement for Natalie's tuition at The Early School from the 2004-2005 school year. Plaintiffs' due process hearing was held on June 20 and 21, 2006.

The Hearings Officer issued an order on September 1, 2006 concluding that the August 10, 2004 IEP did not provide Natalie with a FAPE for the 2004-2005 school year, but denying Plaintiffs' request for reimbursement because they did not file their request for a hearing within ninety days of the unilateral placement as required by Hawaii Revised Statutes ("HRS") § 302A-443 (applying a ninety-day limitations period for requesting a due process hearing for reimbursement of private school placement). ARA at 25. The Hearings Officer, having found a denial of FAPE but not ordering the remedy sought by Plaintiffs, determined that Plaintiffs were "the prevailing party in this matter." Hearings Officer's Decision, ARA at 267.

On October 2, 2006, Plaintiffs filed a Complaint in this court, seeking a declaration that the application of HRS § 302A-443(a)(2) was unlawful under the IDEA, and that they did not receive sufficient notice of HRS § 302A-443's

ninety-day limitations period for requesting a due process hearing for reimbursement of private school placement. Plaintiffs thus sought an order that they be awarded reimbursement for the cost of private school placement for the 2004-2005 school year. This court denied Plaintiffs' Motion for Declaratory Relief on April 18, 2007.

On May 2, 2007, Plaintiffs filed a Motion for Award of Attorneys' Fees and Cost. Defendants filed an objection, and Magistrate Judge Barry M. Kurren issued a Special Master's Report on June 6, 2007 awarding attorneys' fees in the amount of $9,365.71 and costs in the amount of $92.57. Defendants now appeal the Special Master's Report, arguing that Plaintiffs were not "prevailing parties" in the administrative proceeding, and thus they are not entitled to attorneys' fees and costs. Plaintiffs did not object to the Special Master's Report, but filed an opposition to Defendant's objections.

## II. **STANDARD OF REVIEW**

In acting on a special master's report, the district court must afford an opportunity to be heard and may receive evidence. Fed. R. Civ. P. 53(g)(1). The district court may "adopt or affirm; modify; wholly or partly reject or reverse, or resubmit to the master with instructions." *Id.*

With an irrelevant exception, the district court must decide de novo all objections to findings of fact and/or conclusions of law made or recommended by the special master. Fed. R. Civ. P. 53(g)(3) and (4) (amended in 2003 to change the standard of review for findings of fact made or recommended by a master); *see also Summers v. Howard Univ.*, 374 F.3d 1188, 1195 n. 6 (D.C. Cir. 2004) (noting that Fed. R. Civ. P. 53 was amended in 2003 to provide for de novo review of a special master's fact findings by the district court).

### III. <u>ANALYSIS</u>

The IDEA provides that a court "may award reasonable attorneys' fees as part of the costs . . . to a prevailing party who is the parent of a child with a disability." 20 U.S.C. § 1415(i)(3)(B). A "prevailing party" is a party who succeeds

> on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit. Such success results in a material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute. Where the plaintiff's success on a legal claim can be characterized as purely technical or de minimis, the plaintiff cannot claim fees as a prevailing party. There must be a causal link between the litigation brought and the outcome gained.

*Parents of Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir.1994) (quotations and citations omitted); *see also Shapiro v. Paradise Valley Unified Sch. Dist.*, 374 F.3d 857, 864 (9th Cir. 2004); *V.S. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1233 (9th Cir. 2007). A de minimis success confers no rights on a party and does not impact the obligation of the defendant toward the plaintiff. *Park v. Anaheim Union Sch. Dist.*, 464 F.3d 1025, 1036 (9th Cir. 2006).

Defendant makes two arguments. First, it argues that because the Plaintiffs did not obtain the sole remedy they sought in the administrative hearing (private school placement reimbursement), they cannot be considered the prevailing party. Second, Defendant argues that Natalie's eligibility for special education services was not an issue in the administrative hearing, and the offering of a FAPE in subsequent years did not hinge on the Hearing Officer's finding. Defendant takes too narrow a view of the law and facts.

In determining prevailing party status, courts do not operate in a vacuum; instead, courts must determine if the outcome obtained by the party seeking fees, at least to some degree, furthers the goals Congress sought by enacting the legislation. The Ninth Circuit has already spoken on this issue -- a determination by a Hearings Officer that a student was denied a FAPE "is the most

significant of successes possible under the Individuals with Disabilities Education Act." *Id.*[1]

By prevailing on the claim that Natalie was denied a FAPE[2], the legal relationship with Defendant certainly changed.  The Hearing Officer determined that the placement offered Natalie was determined prior to the completion of the August 10, 2004 IEP "and did not meet Student's unique needs.  The August 10, 2004 IEP did not provide Student with a placement in the least restrictive environment.  As such, Student was denied a FAPE."  Hearings Officer's Decision, ARA at 264.

Plaintiffs' success was not de minimis or technical.  The Hearings Officer did not merely find procedural violations unrelated to educational goals; instead, she found that the offer of FAPE did not meet Natalie's "unique needs" and did not offer a proper placement.  This determination would certainly be

---

[1] Defendant argues that *Park* found prevailing party status only because the Hearings Officer found a denial of FAPE *and* ordered compensatory education.  In other words, according to the Defendant, *Park* is distinguishable because the Plaintiffs in this case, unlike *Park*, did not obtain the remedy sought.  Defendant overlooks, however, that *Park* stated that a finding of a denial of FAPE was the "most significant of successes" possible under IDEA "even setting aside the other issue on which Appellants prevailed. . . ."  *Id*.  *See also Los Gatos-Saratoga Joint Union High Sch. District*, 484 F.3d at 1234 n.3 (interpreting *Park* to state that "the determination regarding a denial of FAPE *alone* would be sufficient to confer prevailing party status. . . .").

[2] The Defendant claims that Natalie's eligibility for special education services was not an issue before the Hearings Officer.  This claim begs the question -- the issue is not whether Natalie was eligible for services, but whether Natalie was being provided the services to which she was entitled under law.

relevant in future years, including the formation of future IEPs.  A defective 2004 IEP could infect future IEPs; a corrected 2004 IEP would certainly provide future IEP teams with the tools necessary to develop an appropriate, legal offer of FAPE.[3]

Defendant argues, however, that the offering of a FAPE in future years is independent of the August 10, 2004 IEP.  In support of this argument, Defendant points out that the November 28, 2005 IEP was prepared prior to the Hearings Officer's Order, and yet Natalie attended a charter school and did not contest her 2005 IEP.  In other words, Defendant argues "no harm, no foul."  But the issue is not whether Plaintiffs can prove actual harm based on the flawed IEP.  Instead, this court must determine whether the Plaintiffs received some benefit on a significant issue in the litigation; that is, the success must result in a material alteration of the legal relationship of the parties, and it must do so in a manner which Congress sought to promote in the fee statute.  Correcting the flawed 2004 IEP would certainly carry forward, past 2005, and impact future IEPs, particularly in the case of a 5-year-old child.   That is why, at least in part, a determination by a

---

[3] The IDEA requires that an IEP team examine and revise the prior year's IEP.  *See* 20 U.S.C. § 1414(d)(4)(A) (the IEP team must "review[ ] the child's IEP periodically, but not less frequently than annually, to determine whether the annual goals are being met; and revise[ ] the IEP as appropriate. . . ."). And in fact, the November 28, 2005 IEP team did review the August 10, 2004 IEP.

Hearings Officer that a student was denied a FAPE "is the most significant of successes possible under the Individuals with Disabilities Education Act." *Park,* 464 F.3d at 1036.

## IV.  CONCLUSION

For the foregoing reasons, the court ADOPTS the Special Master's Report.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, July 19, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Natalie M., et al. v. Dep't of Educ.,* Civ. No. 06-00539 JMS/BMK, Order Adopting the Report of the Special Master